The first one is United States of America v. Del-Jen. Please support. My name is Abel Lippy and I'm here on behalf of the Relators. We're bringing a False Claims Act against Del-Jen, Incorporated to write on false claims submitted to the United States government. The Job Corps program was created to assist disadvantaged youths, to educate them, train them, and place them in jobs to overcome their beginning disabilities in life, not to line the pockets of fraudsters. This case involved the establishment of the North Texas Job Corps Center in McKinney, Texas. The contract was awarded to a company called Career Opportunities, Inc., COI, which immediately entered into a subcontract with Del-Jen. The case was split by rulings from the district court. We have several other cases. For example, there was a rape case for one of the students filed in state court. There is a wrongful termination case filed by one of the Relators and a separate claim against COI. This case involves the claims against Del-Jen, which we found out after the ruling of the district court. We discovered the existence of the actual subcontract between Del-Jen and COI, which, had we had it, would have been attached to the complaint and would have added more details concerning the relationship between the two companies. Nevertheless, we believe that the third amended complaint does satisfy the pleading standards as this court set forth in the Grubbs case. We've discussed Grubbs at length in our brief. The important section, I believe, from Grubbs is that a plaintiff may survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted. Keeping in mind that the purpose of 9b is to avoid frivolous claims and to give defendants fair notice, this court went on to state that a complaint that includes both particular details of a scheme to present fraudulent bills and allegations making it likely that bills were actually submitted limits any fishing to a small pond that is either stocked or dead. Well, it seems to me that the situation in dealing with Grubbs is a somewhat unusual case where you had the doctor who shows up at a new place of work and gets introduced into a culture of defrauding, of allegation of fraud. We don't have anything, it seems to me, like this. In Judge Higginbotham's opinion, it seems to me Grubbs is really talking about in the very kind of unusual circumstances of Grubbs, here's how you can make the who, what, when, why, how, even though you don't have the actual claims having been filed. It was sort of an admission by other individuals involved in the scheme. Is there anything comparable to that here where you can use the Grubbs case on similar facts or are you just saying it's a fairly loose standard now after Grubbs? Well, this court has affirmed a number of dismissals since Grubbs. We haven't gotten too loose.  In Gage, for example, Gage v. Before you go too far afield, what is similar about your case to Grubbs? The similarity is, in fact, I think we go a lot further because we plead, for example, with respect to security. There's a zero tolerance policy under paragraph 39 of the complaint. The DOL had specific policies and guidelines against allowing drug use and student violence on campus. Mr. Jameson, one of the relators, a former police officer from Chicago, was hired to head up security. He started reporting to his superior drug use, drug sales, student rapes, and he was specifically told in paragraphs 37 and 38 of the complaint, he was specifically told to be quiet, not to submit those. He knew under the regulations that these were supposed to be reported. He also knew that under state law these were violations of law and they needed to be reported, and he was instructed not to report them. I believe that takes this case squarely under Escobar. The Supreme Court decision in Escobar in 2016 held that when it approved the implied false certification doctrine, the Supreme Court held that if you make representations but you sort of leave out reporting something that's material that you're required to supply, that there is that implication of the false certification. You're impliedly certifying compliance with a material statutory regulatory requirement. So we have alleged that there were, with respect to admissions, there were requirements that are outlined in the complaint that they ignored and admitted students. We've alleged how certain amounts, about $36,000 per student, for a student admitted and on campus was paid. And then we've alleged the security omissions. The education certification, there are exhibits attached to the complaint which indicate that people were being certified as having satisfied the educational standards but really hadn't. And then placement, they get $79,000 approximately per student that's placed. There were reports of placements, examples attached to the complaint, that were false. These people did not actually receive those. So what we have here is that Delgin was working with COI at the North Texas Job Corps Center. They were doing certain things which, if we'd had the subcontract, we would have been able to spell it out in greater detail. And that's the point of our motion to supplement the record. Pardon me. And the subcontract is actually before the court as an exhibit to our motion to supplement. But the fact is, is that one of the relators was heading up security. One was involved in the education. One was involved in the placement. And they've all reported the allegations of the specific violations of law. Now, the fact that the contract was with COI and not with Delgin is not at all a problem because if you look at the relationship between them, first of all, we've alleged that they were working together. We've alleged that they were dividing up responsibilities at the center and how they were dividing them up, that they had compartmentalized the work. This was being done by one company and this was being done by another. But that the—what's the case? Allison Engine, I believe, was a Supreme Court case where there were false certifications by one company. The contract was between the shipyards and the United States government and the Supreme Court said that it's not enough that you're collecting money from a government program. You have to show with your allegations that you're making certifications that will be material to what is presented to the government. I think we've met that standard with the way we've alleged the relationship and what was being done by each entity. The plaintiff—this is from Allison Engine Company— must prove that the defendant intended that the false record or statement is material to the government's decision to pay or approve the false claims. We've alleged how the failure to report the crimes and the use of drugs on the campus meant that the government didn't know that these people should be expelled. And we've alleged that they were paid a certain amount per student. I think the conclusion from that is clear. Delgin knew that this type of reporting was essential. They knew that they were required to make the reports of the violations of law and they intentionally failed to do so. Mr. Jameson, the relator, was specifically instructed to shut up and to not submit the claims. Don't call the McKinney police. Don't ruffle feathers. The people were told to continue. The teachers, for example, in the education process, were told to assist the students who were failing in their tests and certify that they had passed when, in fact, they had not. So we believe we've got the sufficient allegations. Post-Grubbs, the Fifth Circuit has set forth something that I believe is of assistance and particularly helpful in this case. In the Rigsby v. State Farm case before this Court in 2015, in a footnote the Court observed that we hasten to add here that we have recently suggested in the Post-Grubbs FCA context that additional discovery might be employed to permit plaintiffs to cure certain defects in a complaint, citing the Bollinger Shipyards case and quoting with approval the fact that this is the law in the Sixth Circuit at least. That's a perfect example of why the standard practice of defendants in False Claims Act cases is to erect obstacles to discovery, to file one 12B6 motion after another, to refuse to make even initial disclosures, much less participate in discovery. And that makes it extremely difficult for a plaintiff to allege all the intricate details of an elaborate scheme. Here we're fortunate that we had relators from different aspects of the North Texas Job Corps Center who focused on the different areas of responsibility. Some were employees of COI, some were employees of DELGEM, some of the relators, and they all point, and we've pointed out in the complaint, how each of these significant departments, not just one, I think one would have been more than sufficient to make false claims, but all four of these aspects were being violated, both with claims that were false when they were made and that omitted material aspects. This Court and we believe even the Supreme Court, by the way, it has reviewed the case law. I believe in the Escobar case the Court recognized that you don't have to plead all the specific elements, but that if instead you demonstrate that there are material omissions from what is filed, that that can be sufficient. So we have in our complaint, although it was filed, the case was filed before Escobar was issued, but the amended complaint, I believe, alleges all the aspects, all the elements of a false certification claim. How they are required, the defendant, DELGEM, was required to submit reports to the DOL as to numbers of students that were qualified. They submitted these reports but omitted that they had criminal records that disqualified them from being admitted. They omitted reports of student violence and student drug use, despite the zero-tolerance policy of the DOL and despite the obligation to submit SIRs, significant incident reports, that were required to be submitted whenever anything such as this occurred. So for that reason, we believe that the pleading standards have been satisfied. Good morning, Your Honors. May it please the Court, Aaron Street on behalf of the Appellee DELGEM. The plaintiff's complaint in this case fails for two independent, although overlapping, reasons. First of all, the plaintiffs failed to allege any particular bad act by an employee of DELGEM, despite the fact that the plaintiffs were put on notice of that defect in their pleading. In Judge Lindsey's first motion to dismiss ruling, and despite the fact that they had four opportunities to plead this case. Second, as Judge Southwick's question suggested, the plaintiffs here have simply failed to plead the who, what, where, when, and how of a scheme to submit false claims to the United States with the particularity required in Grubbs and this Court's case law, which was the basis of Judge Lindsey's first ruling on the motion to dismiss and a defect that the plaintiffs never corrected. So turning to the failure to allege any unlawful act by a DELGEM employee, that failure was particularly notable here because the relators comprised a group of employees of both COI and DELGEM. They knew who worked for COI and who worked for DELGEM and when. It's especially notable that Mr. Jameson, the lead relator here, alleges that he was directly supervised by Ms. Martin, the only employee who ever worked for DELGEM at any time during this time period. Mr. Jameson would have known when Ms. Martin worked for DELGEM, when she was promoted to COI, and when the various acts occurred. And yet after four opportunities, he failed to allege that information. What the plaintiffs did instead is what I would call mix-and-match pleading. They pleaded a three-year period of alleged false claims and bad acts without giving any specific dates, and they pleaded a three-year period in which various employees worked for various companies. All of them worked for COI except for Martin, who worked during that three-year period for unspecified times for DELGEM and then COI. And they hope and ask that the court will draw an inference that because these time periods match up or overlap, that at some time of some alleged bad act, a DELGEM employee must have engaged in part of the false claims scheme. Judge Lindsey correctly held here that the plaintiffs should not get a fifth bite at the apple, that they pleaded their best case after four claims, and that it would be wasteful of judicial and party resources to allow yet another amendment here or to allow the case to go forward. Turning to the second independent ground for affirmance, the failure to meet the basic Rule 9 pleading standard as to a scheme, Judge Southwick's question I think correctly indicated that Grubbs was a fairly narrow exception to the general particularity standard, and the court in Grubbs only drew that exception with respect to pleading the contents of the false claim itself. And the court said there, I think the upshot of Grubbs is, if the plaintiff cannot plead the specifics of a false claim, the specific contents, the specific dates, the specific individuals involved, then what it needs to do is plead particular indicia of a scheme that leads to the inference that false claims would have been submitted. And the court in Grubbs gave very clear guidance of what would satisfy those particular indicia. First of all, even if the plaintiff doesn't plead a false claim submission with particularity, Grubbs says they need to plead some fraudulent acts with particularity. In Grubbs it was the recording of services that were not actually rendered. The court said that's enough to infer that those false claims would have been submitted on those recorded services. We don't have any analog to that here. What we have is several general allegations of security, admissions, employment, and placement, and then we have date ranges matched up with those generalized allegations. We don't have any particular date when any particular fraudulent act occurred or was done by a particular employee that could lead to the inference that a false claim was submitted. That's what Judge Lindsey said in his ruling on the first motion to dismiss. Second in Grubbs, the court said that the claim crossed the pleading threshold because there was a specifically pleaded meeting in which the scheme was hatched and laid out in great detail. And there Grubbs, the relator, pleaded a meeting with the doctors that were engaged in the scheme, exactly how the scheme would work, and inviting him to participate in the scheme. And he pleaded the date that that occurred. He even pleaded the location. I think it was at a Papa Do's or Papa C Do's. So he pleaded with great particularity the scheme, and then he gave specific, dated, individualized instances of when the scheme was carried out. We don't have any of that here. What we have is what I would call mass pleading, at least on three axes. First of all, you have mass pleading as to dates. As I mentioned, they give broad date ranges. They never identify a date that any particular fraudulent act was submitted or even conceived or undertaken. Second of all, they have mass pleading as to people. When you look at the four categories that are alleged, they have a list of people. They say X, A, B, C, D, and E all participated in this scheme to do false admissions or false placement. They don't identify the specific role of any particular individual in the scheme, much less who those individuals worked for at the particular time. And finally, and I think maybe most notably, you have mass pleading as to the nature of the false claims. So Grubb says you need to be able to plead some particular fraudulent act that would have led to the false claim being submitted. What you have here is over an X-year period of time, 80% of these claims were false. 60% of these claims were false, with no particular examples of the false claims being submitted. So Judge Lindsey identified all of this in his initial opinion, and we quoted the key parts of that opinion on page 24 of our Appleese brief. The plaintiffs did nothing to correct that in their later amendments to their complaint. And so even independent of the failure to plead any act by a DELGEN employee, the failure to plead the scheme overall, consistent with Rule 9, would require an affirmance. Let me turn to the security allegations briefly that were emphasized so heavily by my friend on the other side. That was symptomatic of all of what I've just discussed. There was a date range pleaded in which security violations allegedly occurred or were not reported. No specific instance, not a single time when there's any evidence pleaded that a particular instance was not reported or was ordered to be suppressed. No dates, no particular fraud, and I think the invocation of Escobar,  I think falls flat as well because Escobar said, yes, you can have an implied certification theory, but you need to have a very specific pleading of how the failure of the regulation or the violation would have led to submission of a false claim. And if you look at what happened here with respect to security, the only allegations that have anything to do with Ms. Martin do not have to do with reporting to the Department of Labor. The reporting to the Department of Labor is allegedly done by Ms. Amaran, who is not identified as a DELGEN employee. All you have with Ms. Martin is allegedly not reporting to the police, and there's no linking of that to the Department of Labor. But even more fundamental than that is that Ms. Martin is not alleged to have been a DELGEN employee during the date range that had to do with security. In summary, DELGEN is much like the hospital in the Grubbs case, and it's much like the doctors that were not allowed to be sued in the Grubbs case. There's no specific allegations as to DELGEN. There's just a mass pleading, a lumping in of DELGEN with individuals who allegedly committed bad acts. And finally, I guess I would point out that the plaintiffs will have their day in court here. As my friend on the other side indicated, there is a separate case pending in the Northern District of Texas under the False Claims Act against COI, the company that under their own allegations employed all of the bad actors. So they can move forward with that case. That's a separate case. There's no reason for this court to further loosen or water down the False Claims Act pleading standards far beyond what Grubbs would suggest. And if there are no further questions, then we'll ask that the court affirm the judgment of the district court. What record evidence is there that a DELGEN employee, not a former DELGEN employee, but a current one, what record evidence is there that a DELGEN employee prepared, presented, or conspired to prepare or present a false claim? Mr. Jameson was a DELGEN employee at the time in question. He was in charge of security. He was instructed by Maria Martin, who was, for a period of time during Mr. Jameson's employment, for a period of time she was with DELGEN, and for a period of time, at the time we prepared this complaint, we didn't know the dates. We've subsequently taken her deposition in the rape case, and we have those dates pinned down, but unfortunately we didn't have any discovery. But we knew she was with both. During that entire period of time, Mr. Jameson was repeatedly instructed not to report to the police department, not to report these incidents of drug use and student violence. That, under ESCOBAR, is material because, as we've alleged, paragraph 39 of the complaint, there is a requirement that you report these instances, which would lead to automatic expulsion. Well, every time someone's expelled, that's money lost. Therefore, I believe that's a specific example. I go back to the need for some discovery, some modicum of discovery. I believe we have alleged, well, for one thing, there is a conspiracy alleged. We have alleged that DELGEN and COI were engaged in a conspiracy. We have alleged that they were together operating the North Texas Job Corps Center. We have alleged that COI knew that these incidents were occurring and was making the reports and was getting payment, and then they were paying DELGEN. So to answer the court's question, I believe we've got both Jameson and Martin on the security aspect in terms of the other aspects of the admissions process and the— Are you still claiming that Martin presented a false claim as a DELGEN employee while a DELGEN employee? DELGEN was furnishing information or omitting to furnish information while it was working together with COI. COI, we believe, was submitting the claims, but they had subcontracted with DELGEN to furnish, for example, security. So security is supposed to report drug violence and rapes. They were told not to do it, and this was material. It was something under Allison Engine, for example. We've alleged sufficiently that there was knowledge that this needed to be reported and there were specific instructions that it not be reported, and that, I believe, satisfies the requirement because we're demonstrating that there was a duty to make those reports and there was an affirmative decision on numerous occasions. Well, it seems to me you've certainly alleged as to COI, but DELGEN's doing what COI told them to. They had DELGEN—where's DELGEN's independent duty to report to DOL? Unfortunately, in the subcontract, which they had not furnished and we obtained later, it imposes an affirmative obligation on DELGEN to be familiar with and to comply with all requirements of the DOL. We have alleged in our pleading that DELGEN knew of the—it's called the PRH, the policy handbook, and that they knew of the regulations. And so they know of the regulations, they fail to make the reports, and they participate in the reports that were false. And then they assist materially, they assisted COI in submitting those to the federal government. Again, I go back to the requirement that we have reliable indicia of a fraudulent scheme and we have reliable indications that false reports were submitted to the United States government and then we were cut off and not allowed any discovery. All right, Counsel.